COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Frank and Beales
Argued at Chesapeake, Virginia


JOHN WILSON ROULHAC, JR.
                                                    OPINION BY
v.        Record No. 0774-06-1              JUDGE ROBERT P. FRANK
                                                    JUNE 12, 2007
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                          Dean W. Sword, Jr., Judge

            Stacie A. Cass, Assistant Appellate Defender (Catherine E.P. Haas,
            Assistant Appellate Defender; Office of the Appellate Defender, on
            briefs), for appellant.

            Karen Misbach, Assistant Attorney General II (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        John Wilson Roulhac, Jr., appellant, was convicted in a bench trial of possession of cocaine

in violation of Code § 18.2-250.  On appeal, he contends the trial court erred in denying his motion

to suppress, as the police did not have reasonable suspicion to detain or pat him down.  For the

reasons that follow, we reverse and remand.

                                    BACKGROUND

        On August 22, 2006, Portsmouth police officers Worley and Candelario were riding

patrol on High Street when Worley observed appellant and another individual conduct a "hand to

hand transaction" in which it "appeared that they may have transferred something."  Worley

testified, "based on my experience of when you see a hand to hand transaction, that means that

usually they are transferring something."  Officer Worley was unable to ascertain the nature of

the item that was possibly exchanged.  He further indicated that he did not know if the

individuals had committed a crime.

The officers stopped their vehicle and approached the two men on foot. Officer Candelario spoke with appellant and determined that there were no outstanding warrants for him. He informed appellant he was free to go.[1] Officer Worley talked to the other man. As appellant was about to walk away, Officer Worley approached appellant, and without blocking his path notified appellant "that there was a high [terror] threat alert. And I asked him if he had any rocket launchers, hand grenades, any terrorist plans or terrorist papers in his pockets." Worley then asked appellant for consent to search. Appellant declined the invitation to be searched. He said he did not possess any of the items Worley had mentioned, and then reached into his pockets. Although Worley never observed a gun, or anything that appeared to be a gun, on appellant's person, Worley grabbed appellant's hands and patted him down for weapons. When asked if appellant had any noticeable bulges that appeared to be weapons, Worley replied, "I wasn't sure of that." Worley testified that he knew appellant had no gun, "But I didn't know if he had a knife or something in that pocket."

Worley described appellant as wearing layers of clothing. "For August that was kind of unusual to have that, those layers of clothes on."

Worley testified he patted appellant down for his safety. He indicated patting a suspect down was standard procedure, "when someone reaches in their pocket around me, yes, I usually do that, yes, put my hands on them." As a result of the pat down, Worley recovered a smoking device containing cocaine residue.

Appellant filed a motion to suppress, arguing that Worley had no reasonable suspicion to detain him and pat him down. The court overruled appellant's motion and found appellant guilty as charged.

This appeal follows.

---

[1] Appellant does not contest the validity of this encounter.

ANALYSIS

I.

"On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

> Police-citizen confrontations generally fall into one of three categories. First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citations omitted).

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002). In addition, "'[a]n encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting an . . . investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter.'" Londono v. Commonwealth, 40 Va. App. 377, 399, 579

- 3 -

S.E.2d 641, 651 (2003) (quoting McGee, 25 Va. App. at 199, 487 S.E.2d at 262).  Likewise, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."  INS v. Delgado, 466 U.S. 210, 216 (1984).  Such encounters are consensual.  "Fourth Amendment scrutiny is triggered, however, the moment an encounter 'loses its consensual nature.'"  Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citation omitted).

"In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority."  Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*) (citing California v. Hodari D., 499 U.S. 621, 628 (1991)).  An encounter between a police officer and a citizen becomes a seizure for Fourth Amendment purposes "'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,'" Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)), because the citizen's freedom of movement was being restrained by the use of physical force or show of authority, Hodari D., 499 U.S. at 626-27.

Among the factors which determine whether an officer "by means of physical force or a show of authority" would cause a reasonable person to feel seized, Mendenhall, 446 U.S. at 553, are the "'threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"  Londono, 40 Va. App. at 398-99, 579 S.E.2d at 651 (quoting Mendenhall, 446 U.S. at 554).

Here, the initial encounter between Officer Worley and appellant was consensual and engendered no Fourth Amendment interest.  Worley merely approached appellant and inquired whether appellant had any knowledge of terrorist activity.  Worley did not make any threats or

- 4 -

demands, draw his weapon, or engage in any other form of aggressive behavior. However, once Worley grabbed appellant's wrist, appellant was seized for Fourth Amendment purposes. See Payne, 14 Va. App. at 89, 414 S.E.2d at 870 ("The consensual aspect of this encounter disappeared, however, when defendant refused [the officer's] request to open his fist, and she 'grabbed' his arm. Under such restraint . . . defendant was then 'seized' by the officer."). See also Duhart v. United States, 589 A.2d 895, 898 (D.C. 1991) (holding that once the officer grabbed accused by the wrist, the initial consensual encounter escalated into a seizure).

Worley's use of physical force is clearly one of the criteria recognized by Mendenhall in evaluating the non-consensual nature of a police encounter. Mendenhall, 446 U.S. at 554. It follows that when Worley grabbed hold of appellant's wrist, appellant would not have felt free to leave. We therefore find that appellant was seized at the time Officer Worley grabbed his wrist.[2]

II.

Having found the appellant was seized at the time Worley grabbed appellant's wrist, we next determine whether the officer had reasonable grounds to believe appellant was armed and dangerous.[3]

> "Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."

---

[2] We note that at oral argument, the Commonwealth conceded Worley grabbing appellant's arm was a seizure.

[3] We find that Officer Worley seized appellant solely for the purpose of patting him down for weapons. To that end, we need not address whether appellant was properly detained pursuant to a Terry stop. See Hayes v. Florida, 470 U.S. 811, 816 (1985) (holding that an officer who develops reasonable suspicion that criminal activity is afoot may stop a person "in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information" to either dispel or confirm his suspicions).

- 5 -

Lett v. Commonwealth, 7 Va. App. 191, 195, 372 S.E.2d 195, 197 (1988) (quoting Sibron v. New York, 392 U.S. 40, 62 (1968)). The circumstances that a court can consider when determining whether an officer had reasonable suspicion include the nature of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating. Walker v. Commonwealth, 42 Va. App. 782, 791-92, 595 S.E.2d 30, 35 (2004).

The facts here do not give Worley an objectively reasonable basis for suspecting that appellant was armed and dangerous. Indeed Worley testified it was his standard procedure to grab an individual's arm when the individual reaches into his pocket.

Our decision is controlled by this Court's decision in Payne, 14 Va. App. 86, 414 S.E.2d 869. In Payne, an officer observed defendant "riffling through a wallet." Id. at 88, 414 S.E.2d at 869. The officer approached defendant and inquired if the wallet belonged to him. Id. As defendant was handing the wallet to the officer, the officer noticed that defendant's "left fist was tightly closed." Id. Defendant twice refused the officer's request to open his fist. Id. Believing that the defendant may have a weapon in his hand, the officer grabbed the defendant's arm causing defendant to open his hand and reveal his cocaine. Id. This Court held that "the facts . . . did not give [the officer] an objectively reasonable basis for suspecting that defendant was armed and dangerous." Id. at 89, 414 S.E.2d at 870. In considering that defendant never held his hand in a threatening manner and that there was no indication that the fist contained a concealed weapon, this Court stated that "[u]nder such circumstances, defendant's hesitancy to open his hand did not create a 'reasonable suspicion' that he possessed a weapon." Id. at 90, 414 S.E.2d at 870-71.

We find no meaningful distinction between refusing to open a closed fist and placing one's hand into pockets. In either case, that fact, without more, does not give an officer a reasonable basis to seize the individual.

The Commonwealth argues that Officer Worley's observation of a possible narcotics transaction generates a concern for the presence of weapons. We are mindful that this Court has previously acknowledged that suspicion of narcotics distribution gives rise to an inference of dangerousness. See Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987) (holding that even though the officers who detained Williams had no information that he was armed, they acted reasonably when conducting a protective pat-down search for weapons in light of the fact that they had a reasonable suspicion that Williams was presently engaged in narcotics distribution); see also Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006) (noting "it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction"). However, such are not the facts of this case.

This record is silent as to appellant's involvement in criminal activity, much less his association with drug distribution. When Officer Worley was asked if he observed the individuals "presently committing any crime," his response was a clear "No." Worley testified that he witnessed a small item transfer between the two individuals, yet he never identified the specific nature of the item, stating only that it may have been "a lighter, a cigarette or maybe a narcotics [sic]." Thus, we find the record does not sufficiently establish that Worley had a reasonable suspicion to believe appellant was involved in drug distribution.

In addition, Worley acknowledged that he did not see appellant with a gun or anything that looked like a gun. There is nothing in the record to suggest appellant appeared nervous or behaved in a threatening manner in placing his hands in his pockets. We also note that Worley

never asked appellant to remove his hands from his pockets or attempted to secure his own safety by less intrusive means. See Mejia v. Commonwealth, 17 Va. App. 749, 755, 441 S.E.2d 41, 44 (1994) (noting that officer seized appellant without first having attempted "a less intrusive alternative or explaining why such less intrusive means were impractical").

On these facts, we hold that Officer Worley had no basis to reasonably believe that appellant was armed or dangerous. See Mejia, 17 Va. App. at 755, 441 S.E.2d at 44 (finding no reasonable basis for seizure when sole reason for taking hold of appellant was appellant's posture in preventing officer from exiting his police vehicle after being summoned by the officer to the vehicle); but see Walker, 42 Va. App. at 791, 595 S.E.2d at 35 ("Given the place [high crime area], time [11:00 p.m.], appellant's secretive behavior, and his demeanor, the officer had objective facts sufficient to give him reasonable suspicion to stop appellant and investigate his actions.").

Without consent or reasonable suspicion that appellant was armed, Officer Worley had no lawful authority to grab appellant and to pat him down for weapons. Payne, 14 Va. App. at 90, 414 S.E.2d at 871. The trial court erred in denying appellant's motion to suppress.

Accordingly, we reverse and remand for a new trial if the Commonwealth be so advised.

Reversed and remanded.