108

# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Commonwealth of Virginia

v.

Carlos D. Fitchett

September 16, 2008

Case No. CR08-2297

BY JUDGE RANDALL D. SMITH

Defendant stands indicted in this Court on a charge of possession of a firearm after having been convicted of a felony. The matter is now before this Court on Defendant's Motion to Suppress the firearm in question. Defendant argues that discovery of the firearm was based upon an illegal seizure of Defendant in violation of his Constitutional rights. Specifically, Defendant claims that he surrendered to the show of authority and was therefore seized within the meaning of the Fourth Amendment. Consequently, Defendant contends that the firearm was the fruit of an illegal search and should therefore be suppressed. The Commonwealth and Defendant's counsel argued this case on July 29, 2008, and later submitted briefs. The Court stands ready to rule.

*Facts*

On February 24, 2008, Officer Blount responded to a loud music call at 1:15 a.m. in the area of Schooner Trail and Cutter Court in the City of Chesapeake. While responding, Blount observed two males standing beside each other in the roadway of Cutter Court. One of the males, later identified as Carlos Fitchett, was holding a cup in his hand. As soon as the two males saw the police vehicle, they turned their backs to Blount and stood shoulder to

shoulder for ten seconds. When they turned around, the Defendant did not have the cup. At that point, Officer Blount got out of his vehicle and began to approach. The two individuals began to walk away.

Officer Blount suspected Fitchett of having an open container of alcohol. He told both individuals to stop and asked if they were hiding anything from him. Fitchett replied that he was not hiding anything from him. Blount indicated that given the area where he was located, the time in the morning, and the behavior he had just observed, that he had concerns for his own safety. He advised Fitchett to turn around and put his hands on top of his head. At that time Blount's intention was to conduct a pat-down frisk of Fitchett for "officer safety." Fitchett turned and put his hand up in the air but did not lock his fingers together. Fitchett repeatedly looked back over his shoulder as if to see exactly where he was in relation to Officer Blount. As Officer Blount came close to Fitchett and just touched Fitchett's hands, Fitchett fled on foot before Blount was able to perform the pat-down. Blount began a foot pursuit of Fitchett. Fitchett ran up a driveway on Cutter Court and tripped. As Fitchett started to fall, Blount observed a handgun fall from Fitchett's waistband to the ground on the driveway. Fitchett was then immediately taken into custody.

### Arguments

Defendant argues, first, that *California v. Hodari D*, 499 U.S. 621 (1991), does not apply because, in that case, Defendant never complied with the police officer's commands, whereas, here, Defendant intentionally was compliant and that Blount physically touched Defendant which resulted in a seizure; second, Defendant relies on the holding in *Roulhac v. Commonwealth*, 50 Va. App. 8, 14, 646 S.E.2d 4, 7 (2007), which stated that, once the officer touched Defendant's wrist, the seizure occurred for Fourth Amendment purposes.

The Commonwealth argues that *Hodari D* applies here because Defendant never surrendered to the authority of the police officer and, therefore, was not seized under the Fourth Amendment.

### Discussion

Police-citizen encounters typically fall into one of three categories for constitutional analysis. First, there are consensual encounters that occur in public places and do not implicate the Fourth Amendment. Second, are brief investigatory stops that must be based upon a reasonable, articulable suspicion

that criminal conduct is or may be occurring ("Terry stops"). Last is the full-scale arrest or searches that must be based upon probable cause. *Roulhac v. Commonwealth*, 50 Va. App. 8, 14, 646 S.E.2d 4, 7 (2007).

The Court in *Roulhac* quoted the Supreme Court by noting that "[l]aw enforcement officers do no violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *Roulhac*, 50 Va. App. at 14, 646 S.E.2d at 7 (quoting *United States v. Drayton*, 536 U.S. 194, 200, 122 S. Ct. 2105, 2110 (2002)). The Court continues by noting:

> In addition, "[a]n encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting an . . . investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter." *Londono v. Commonwealth*, 40 Va. App. 377, 399, 570 S.E.2d 641, 651 (2003) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 199, 487 S.E.2d 259, 262 (1997)). Likewise, "interrogation relating to one's identity or request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762 (1984). Such encounters are consensual. "Fourth Amendment scrutiny is triggered, however, the moment an encounter 'loses its consensual nature'." *Payne v. Commonwealth*, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citation omitted).

"In order for any seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority." *Thomas v. Commonwealth*, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997). An encounter between a police officer and a citizen becomes a seizure for Fourth Amendment purposes "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *Baldwin v. Commonwealth*, 243 Va. App. 191, 196, 413 S.E.2d 645, 648 (1992) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980)), because the citizen's freedom of movement was being restrained by the use of physical force or show of authority. *Hodari D*, 499 U.S. at 626-627, 11 S. Ct. at 1550-51.

Among the factors which determine whether an officer "by means of physical force or a show of authority" would cause a reasonable person to feel seized, *Mendenhall*, 446 U.S. at 553, 100 S. Ct. at 1877, are the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Londano*, 40 Va. App. at 398-99, 579 S.E.2d at 651 (quoting *Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877).

The issue in *Roulhac* was which type of police-citizen encounter occurred and whether or not the police officer's conduct was constitutionally permissible. The Court in *Roulhac* determined that the encounter was consensual until the officer grabbed the Defendant's wrist. The physical contact with the Defendant, even if slight, turned the encounter into one that necessarily required Fourth Amendment analysis because the touching constituted a seizure. The *Roulhac* Court then analyzed the facts under a totality of the circumstances test based upon an objective standard to determine if the police officer had either a reasonable, articulable suspicion that the Defendant was either armed and dangerous or possessed drugs. Finding neither, the Court held that its decision was controlled by *Payne v. Commonwealth* and Roulhac's seizure was unconstitutional. 14 Va. App.86, 414 S.E.2d 869 (1992)

Defendant here seeks to distinguish *Hodari D* based upon language in the decision that the evidence was admissible because the Defendant abandoned the evidence prior to being seized by the police. Defendant argues that the touching of Fitchett by Officer Blount turned the encounter into a seizure and Officer Blount lacked either a reasonable suspicion or probable cause to seize the Defendant for a frisk for weapons or any other criminal conduct.

The Courts have utilized three tests to define whether a Defendant has been seized under the Fourth Amendment and distinguish such a seizure from a consensual encounter. First, in *Mendenhall*, the court employed an objective standard of whether a reasonable person under the circumstances would feel free to leave. Second, *Hodari D* defined seizure by invoking the requirements of a common law arrest that the defendant submits to. 499 U.S. 621, 624, 11 S. Ct. at 1547, 1549-50 (1991). Lastly, *Brewer v. County of Inyo* focused on the means intentionally applied by the officer. 489 U.S. 593, 599, 109 S. Ct. 1378, 1383 (1989).

Although these tests define a seizure, they do not answer the specific issue presented here. In *Motley v. Commonwealth*, the court considered whether to suppress cocaine that the Defendant dropped after being ordered to

stop by a police officer. In that case, the police officer was in a police car and heard a radio report to be on the lookout for an individual who matched the Defendant's description. When the officer saw the Defendant walking down the street, the officer got out of the police car and ordered the Defendant to stop. The Defendant halted and dropped an item in his hand to the ground. The item was later identified as crack cocaine. The Court held that the officer did not have reasonable suspicion and, therefore, the officer's order to stop paired with the Defendant's compliance constituted a seizure. Given that the seizure was illegal, the recovered drugs were suppressed as evidence. In *Motley*, the court stated "[t]hus the issue in *Hodari D* was not what a reasonable person would have assumed under the circumstances, but what the accused actually did in response to the police officer's show of authority" *Motley,* 17 Va. App. at 442, 437 S.E.2d at 234.

The issue in this case is the same as stated in *Hodari D*: whether, with respect to a show of authority and application of physical force, a seizure occurs even though the subject does not yield.

When Officer Blount ordered the Defendant to stop and raise his arms, the Defendant was seized within the meaning of the Fourth Amendment. A further seizure occurred when Officer Blount touched the Defendant's hand. The question then becomes whether Officer Blount had a reasonable, articulable suspicion to stop the Defendant. This Court finds that he did. Reasonable suspicion requires that objective facts support the need to investigate further a suspect's conduct. Given the facts, a complaint for loud music, time of the day, the Defendant's conduct in concealing something from the officer, and transferring possession of the cup, a brief detention of the Defendant was permissible to further investigate the officer's suspicion that the Defendant had an open container of alcohol. Consequently, Officer Blount ordering the Defendant to stop did not violate the Fourth Amendment.

However, before Officer Blount continued to investigate his suspicions, he next planned to search the Defendant for weapons to protect his own safety. No objective facts support this part of Officer Blount's actions. *Terry v. Ohio* does not permit a generalized policy that allows a police officer to frisk all persons. 392 U.S. 1, 88 S. Ct. 1868 (1968); *see McCain v. Commonwealth,* 275 Va. 546,659 S.E.2d 512 (2008).

In this case, the Defendant did not submit to the illegal frisk but instead fled from the officer. The answer to the question of what impact an illegal detention has when the Defendant is touched but flees and evidence is discovered before the fugitive is taken into custody is found in the *Hodari D* decision. There, the Court stated:

> To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that, for Fourth Amendment purposes, there is a *continuing* arrest during the period of fugitivity. If, for example, [the officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.

*Hodari D*, 499 U.S. at 625, 111 S. Ct. at 1550 (emphasis in original).

When the Defendant broke away and fled from Officer Blount, he was no longer submitting to the detention. When Officer Blount observed the concealed weapon fall from the Defendant's waistband during the chase, Officer Blount at that time possessed probable cause to arrest the Defendant.

In order to seek protection under the Fourth Amendment, the Defendant should have submitted to Officer Blount's authority. Defendant's Motion to Suppress is denied for reasons stated in this opinion.