COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Powell
Argued at Chesapeake, Virginia


KEVIN NATHANIEL ROBERTS
                                                                OPINION BY
v.        Record No. 2486-08-1                   CHIEF JUDGE WALTER S. FELTON, JR.
                                                           NOVEMBER 10, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Richard J. Davis, III (Kozak & Hamlet, P.C., on brief), for appellant.

Joshua M. Didlake, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


        Following the trial court's denial of his motion to suppress evidence seized from him, Kevin

Nathaniel Roberts ("appellant") was convicted, consistent with his conditional guilty plea, of

possession of cocaine with intent to distribute in violation of Code § 18.2-248.  On appeal, he

contends the trial court erred in denying his motion to suppress evidence of a plastic bag containing

five individually packaged rocks of cocaine seized from his hand.  For the following reasons, we

reverse the judgment of the trial court.

BACKGROUND

        In our review of a trial court's denial of a motion to suppress, we determine whether the

accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the

light most favorable to the Commonwealth, was reversible error.  Murphy v. Commonwealth, 264

Va. 568, 573, 570 S.E.2d 836, 838 (2002).  "[W]e are bound by the trial court's findings of

historical fact unless 'plainly wrong' or without evidence to support them . . . ."  McGee v.

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v.

United States, 517 U.S. 690, 699 (1996)).  "However, we consider *de novo* whether those facts

implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area

protected by the Fourth Amendment."  Hughes v. Commonwealth, 31 Va. App. 447, 454, 524

S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

In the late afternoon of March 14, 2008, Officers Blystone and Riddle were driving

through "a high crime, high drug area" of Portsmouth, an area in which Blystone had made

several prior drug arrests.  Riddle had information that controlled substances were being sold out

of several houses in the area, and directed Blystone's attention to a particular house.[1]  Appellant

and another individual were sitting on the concrete steps leading to the porch of that house, and

appellant's aunt and uncle were sitting on the porch.

Both officers, wearing clothing identifying them as police officers, approached the

individuals on the porch.  Appellant, whose hand was balled in a fist, became upset.  He raised

his voice, repeatedly asking, "Why are you in my yard?  Why are you here?  Why are you

harassing me[?]"  Blystone informed appellant that he had information that drug transactions had

occurred on the street and that he needed to confirm that appellant lived at that address.  When

he asked appellant for his identification, appellant verbally provided it.  Blystone could not recall

whether appellant told him that he lived at that address or that his aunt, who was also on the front

porch, lived there.

When appellant moved onto the porch toward the front door of the house, away from the

officers, Blystone asked appellant if he could search him.[2]  When appellant refused, Blystone

---

[1] The record does not indicate the source or reliability of the officer's information regarding drug sales at this house.

[2] Blystone testified that "a search is always better than a pat-down," and, without indicating he thought appellant was armed, stated that he intended to "pat him down for weapons to make sure he didn't have anything on him" if appellant refused the search.

immediately commanded appellant to "get into the officer safety position," to spread his feet and place his hands on top of his head, telling appellant he was going to pat him down for weapons. Prior to commanding appellant to assume "the officer safety position," Blystone never asked appellant what was in his clenched fist or to open his hand. Blystone proceeded to where appellant was standing on the porch and moved behind him to conduct the pat-down search. After appellant refused to comply with Blystone's repeated instructions to interlace his fingers on top of his head, Blystone grabbed appellant's fisted hand on the top of his head. When he did so, he felt a baggie filled with what he suspected to be crack cocaine rocks.

After recovering the baggie from appellant, Blystone placed him under arrest and searched him. During that search, he recovered $676 in cash from appellant.

At the suppression hearing, Blystone testified that prior to approaching the porch, he observed "several . . . plastic baggies where the corners had been ripped out" in the front yard and the bushes. He also testified that he considered appellant's behavior, i.e., his balled up fist, raised voice, looking around, and moving onto the porch, to be "pre-assault indicators," and grew concerned for his safety. When asked on direct examination on what he based his determination that appellant's actions were "pre-assault indicators," Blystone testified, "I recently *after this* have gone through defensive tactic instructor school; also my five years previous training here in this area and two years in Ohio as a law enforcement officer." (Emphasis added).

Following the trial court's denial of his motion to suppress the evidence seized from him, appellant entered a conditional guilty plea to possession of cocaine with intent to distribute and was convicted on that plea.

ANALYSIS

Appellant contends the trial court erred in denying his motion to suppress the evidence seized from his hand after he refused to consent to the officer's request to search him. He argues

that the officer lacked reasonable, articulable suspicion to believe appellant was armed and dangerous to justify his seizure to conduct a pat-down frisk. We agree.

"The Fourth Amendment prohibits only unreasonable searches and seizures." Thompson v. Commonwealth, 54 Va. App. 1, 7, 675 S.E.2d 832, 834 (2009). "'Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.'" Roulhac v. Commonwealth, 50 Va. App. 8, 14, 646 S.E.2d 4, 7 (2007) (quoting United States v. Drayton, 536 U.S. 194, 200 (2002)). An encounter between a law enforcement officer and an individual does not lose its consensual nature when the officer merely identifies himself, states that he is conducting an investigation, and asks the individual to identify himself. Id. at 14-15, 646 S.E.2d at 7. "An officer questioning a citizen exceeds the scope of his authority and effects a seizure only when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Barkley v. Commonwealth, 39 Va. App. 682, 692, 576 S.E.2d 234, 239 (2003) (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)) (officers knocking on front door of residence and asking questions not seizure).

Here, the encounter lost its consensual nature and became a seizure at the moment Blystone commanded appellant to "get into the officer safety position."

The United States Supreme Court has articulated "a narrowly drawn authority to permit a reasonable [pat-down] search for weapons for the protection of the police officer," Terry v. Ohio, 392 U.S. 1, 27 (1968), "where [the] police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," id. at 30. The circumstances that a court can consider when determining whether an officer had reasonable,

articulable suspicion to believe an individual was armed "include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime." McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008). "'[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" Harris v. Commonwealth, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991) (quoting Terry, 392 U.S. at 27).

Here, Blystone did not indicate that he suspected that appellant was armed, nor did he articulate any particular circumstances from which a reasonably prudent person could conclude that appellant may have been armed. Blystone testified that he relied on appellant's balled up fist, raised voice, and nervous behavior in determining that his behavior was "pre-assault[ive]" causing him to feel "concern" for his safety, based in part on training he received "after" the incident. As we have previously held, "An officer's perception of a suspect's nervousness [and verbal agitation], without additional articulable facts reasonably suggesting the suspect is armed and presently dangerous, cannot justify a pat-down search." Thompson, 54 Va. App. at 8, 675 S.E.2d at 835; see also Terry, 392 U.S. at 22 ("'If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.'" (quoting Beck v. Ohio, 379 U.S. 89, 97 (1964))).

When asked if appellant had "any bulges in his clothing," which Blystone described as "baggy," or anything that "looked like a weapon," or "any indicia of anything that might hurt [him]," Blystone stated, "No. I didn't see anything at the time." See Thompson, 54 Va. App. at

- 5 -

11, 675 S.E.2d at 837 (officers failed to articulate any facts suggesting that accused was "conceal[ing] weapon or was otherwise armed and dangerous").

The officer did not testify that appellant held his clenched fist in a threatening manner, nor that he suspected that appellant's clenched fist contained a weapon. See Payne v. Commonwealth, 14 Va. App. 86, 90, 414 S.E.2d 869, 870-71 (1992) (absent any indication that accused's clenched fist contained weapon, officer lacked objective reasonable basis to believe he was armed and dangerous). Further, Blystone did not pursue a less intrusive means of ensuring safety, such as requesting appellant open his clenched fist prior to initiating the pat-down search. See Roulahac, 50 Va. App. at 19, 646 S.E.2d at 9 (officers failed to first ask accused to remove hands from pockets); see also Mejia v. Commonwealth, 17 Va. App. 749, 755, 441 S.E.2d 41, 44 (1994) (officer unlawfully seized appellant without first attempting "less intrusive alternative or explaining why such less intrusive means were impractical").

The fact that the officers were investigating reported drug distribution in a known "high crime, high drug area" "by itself is insufficient to warrant a pat down. 'Even in high crime areas, where the possibility that any given individual is armed is significant, Terry requires reasonable, individualized suspicion before a frisk for weapons can be conducted.'" Thompson, 54 Va. App. at 8, 675 S.E.2d at 835 (quoting Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990)). "The common thread in those cases involving high crime areas and nervous behavior is the specific act of a furtive gesture to suggest that the suspect is armed." Id. at 10, 675 S.E.2d at 836. Blystone testified that appellant made no such furtive gesture, but rather that he began moving away from him toward the front door of the house. Blystone acknowledged that appellant had previously informed him that either he or his aunt resided there. At that point, appellant was under no obligation to talk with the officers or even to remain outside the house. See id. at 11, 675 S.E.2d at 837 ("[citizen] under no obligation to respond to [officer's] questions"); Roulhac, 50 Va. App.

at 15, 646 S.E.2d at 7-8 (individual free to leave consensual encounter with police); Barkley, 39 Va. App. at 695, 576 S.E.2d at 240 ("'At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (quoting Kyllo v. United States, 533 U.S. 27, 31 (2001))).

"We are mindful that this Court has previously acknowledged that suspicion of narcotics distribution gives rise to an inference of dangerousness." Thompson, 54 Va. App. at 9, 675 S.E.2d at 836 (citing Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987) (officers acted reasonably in conducting protective pat-down search for weapons because they had reasonable suspicion that accused was "presently" engaged in drug distribution)). However, while the officer testified he had received information that drugs may have been distributed from the house in the past and noticed plastic baggies with corners ripped off in the yard and bushes in front of that house as he approached it, there is nothing in the record to suggest that Blystone had anything more than a hunch that appellant was presently distributing illegal drugs so as to give rise to any inference that he may have been armed.

Moreover, Blystone testified that he asked appellant to consent to a search because a search would give him more information. When appellant refused to consent, Blystone immediately commanded appellant to assume the "officer safety position" for a pat-down search. See Royal v. Commonwealth, 37 Va. App. 360, 372, 558 S.E.2d 549, 554-55 (2002) (individual's refusal to consent to search not factor in determining reasonable, articulable suspicion for Terry stop and frisk). "The purpose of [a] 'pat down' search is not to uncover evidence of criminal activity, but to permit the officer to conduct his investigation without encountering a violent response." Murphy, 264 Va. at 573-74, 570 S.E.2d at 839. Blystone did not articulate any information from which a reasonably prudent person could suspect that

appellant was armed, and appellant's declining to consent to a search cannot supply that suspicion.

While we are cognizant of the "daily challenges faced by members of the law enforcement community, courts must remain vigilant to 'not allow our zeal for effective law enforcement to blind us to the peril to our free society that lies in [our] disregard of the protections afforded by the Fourth Amendment.'" Buhrman v. Commonwealth, 275 Va. 501, 507, 659 S.E.2d 325, 328-29 (2008) (quoting Florida v. Royer, 460 U.S. 491, 513 (1983) (Brennan, J. concurring)) (alteration in original).

Based on the totality of the circumstances presented on this record, we conclude that Blystone lacked a reasonable, articulable suspicion to believe that appellant may have been armed so as to justify a frisk for weapons. See Roulhac, 50 Va. App. at 19, 646 S.E.2d at 10 ("Without consent or reasonable suspicion that appellant was armed, [the officer] had no lawful authority to grab appellant and to pat him down for weapons."). Accordingly, we hold that "the evidence recovered as a result of that illegal search was not admissible at trial." Thompson, 54 Va. App. at 12, 675 S.E.2d at 837.

For the foregoing reasons, we reverse appellant's conviction of possession of cocaine with intent to distribute in violation of Code § 18.2-248 and remand for the purpose of allowing appellant to withdraw his plea of guilty if he is so inclined and for further proceedings consistent with this opinion by the Commonwealth if it be so advised.

Reversed and remanded.