# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Damon Mosley

August 16, 2013

Case No. CR13-1380

By Judge Mary Jane Hall

The matter came before the Court on Defendant's Motion to Suppress evidence seized and statements taken as a result of an illegal detention, search, and subsequent arrest. For the reasons stated herein, the Court sustains the motion.

## Factual Background

Officer Ortiz, the community resource officer for the Norfolk Redevelopment Housing complex known as Tidewater Gardens, encountered the defendant at 1:20 p.m. on December 29, 2012, on an NRHA walkway leading from an apartment building to the street. Officer Ortiz did not recognize the defendant. He commenced a conversation with him to learn from which unit he had departed and to inquire about his identifying information. When Mr. Mosley provided his information, the officer passed it to his partner so that he could initiate a radio check for outstanding warrants. In the meanwhile, as the conversation continued, Defendant started to put his hands in the pockets of his jeans. Officer Ortiz directed him to remove the hands from the pocket.

Describing Mr. Mosley's demeanor, the officer testified that he seemed "a little antsy" and "a little nervous." He said that Mr. Mosley kept looking around and asking the same question over and over: "What's this about?" As the conversation continued, Mr. Mosley again began to put his hands in his pockets. The officer instructed him again to remove his hands from his pockets, telling him that he could have a weapon and, therefore, needed to keep his hands out of the pockets. Defendant responded, "Okay, my bad,"

and took his hands out. When Mr. Mosley thereafter went to place his hands in his pockets a third time, the officer told him that he was making him nervous and he was therefore going to pat him down to make sure that he did not have a weapon. The officer instructed Defendant to put his hands behind his back, and Defendant asked what he was being arrested for. At that point, Defendant tried to pull away from Officer Ortiz, but the officer had his elbow. The officer instructed him not to move, and Mr. Mosley pulled away much harder. The officer responded by taking him to the ground, where Defendant struggled. Eventually, the officer drew and aimed his weapon at him. His partner observed the butt of a gun emerging from the jacket pocket. He took the gun from Defendant and inquired whether he possessed a concealed weapons permit. When he answered that he did not, the officers arrested Defendant for possession of a concealed weapon.

## Legal Analysis

The initial encounter between the police and Defendant did not implicate the Fourth Amendment. The United States Supreme Court, reviewing the law applicable to investigative stops, held in *Florida v. Royer*, that police do not violate the Fourth Amendment by approaching an individual and asking if he is willing to answer questions. 460 U.S. 491, 497 (1983). "Acquiescence in a police request, which most citizens will do, does not negate the consensual nature of the response." *Greene v. Commonwealth*, 17 Va. App. 606, 610, 440 S.E.2d 138, 140-41 (1994). The person approached, however, "may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Florida v. Royer*, 460 U.S. at 498 (citing *United States v. Mendenhall, supra*, at 556).

The United States Supreme Court has held that a seizure occurs when a police officer touches the body of the accused. See *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Payne v. Commonwealth*, 14 Va. App. 86, 89, 414 S.E.2d 869, 870 (1992) (consensual aspect of the encounter disappeared when the officer grabbed the defendant's arm).

Application of these controlling precedents to the facts at bar establishes that the encounter between the officer and the defendant became a seizure when the officer grabbed Mr. Mosley's arm. The Constitutionality of that seizure depends on whether the officer had sufficient grounds to conduct a stop. In *Terry v. Ohio*, the Supreme Court determined that a stop is permissible "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." 392 U.S. 1, 30 (1968). The reasonable suspicion required for a stop "is a less demanding standard than probable cause," *Alabama v. White*, 496 U.S. 325, 330 (1990), but it must be based on specific, objective facts. *Zimmerman v. Commonwealth*, 234 Va. 609, 612, 363 S.E.2d 708,

709 (1988) (citing *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478, *quoting United States v. Cortez*, 499 U.S. 411, 417-18 (1981)).

The Commonwealth argues that the consensual encounter between Officer Ortiz and Mr. Mosley ripened into an investigatory stop because the accused moved to place his hands in his pocket three times despite having been warned not to do so. The Court concludes that the sole act of placing hands in pocket by a person who is not suspected of any crime, cannot provide the requisite reasonable, articulable suspicion of criminal activity. In *Roulhac v. Commonwealth*, the Court held that the action of placing hands within pockets while talking to a police officer is not enough to create a reasonable suspicion that an individual is armed and dangerous without other factors present to support that conclusion. 50 Va. App. 8, 646 S.E.2d 4 (2007). Similarly, in *Payne*, an officer noticed while speaking to the defendant that his left fist was tightly closed. The defendant twice refused the officer's request to open his fist. Believing that the defendant may have had a weapon in his hand, the officer grabbed his arm and caused him to open his hand and reveal cocaine. The Court held that:

> the facts . . . did not give [the officer] an objectively reasonable basis for suspecting that defendant was armed and dangerous. She observed no criminal behavior by defendant and had no information relating defendant to such activity. . . . Although his fist remained closed, defendant never held it in a threatening manner, and there was no indication that it contained or concealed a weapon. Under such circumstances, defendant's hesitancy to open his hand did not create a reasonable suspicion that he possessed a weapon.

*Payne*, 14 Va. App. 86, 89-90, 414 S.E.2d 869, 870-71.

Other factors commonly present in cases involving investigatory stops are absent in this one. The stop took place in broad daylight in a residential area that the officer described as having "a little more" crime than average. The officer had neither observed nor heard about any suspicious behavior by Mr. Mosley. There was no indication of narcotics present, which would have given rise to an inference of dangerousness. See *Williams v. Commonwealth*, 4 Va. App. 53, 354 S.E.2d 79 (1987). Mr. Mosley was "a little nervous," but "an officer's perception of a suspect's nervousness, without additional articulable facts reasonably suggesting the suspect is armed and presently dangerous, cannot justify a pat-down search." *Thompson v. Commonwealth*, 54 Va. App. 1, 8, 675 S.E.2d 832, 835 (2009).

The Court holds that the detention and pat-down of Defendant which yielded the recovery of a weapon was not based upon a reasonable,

articulable suspicion of criminal activity. The subsequent arrest and statements made by Defendant were the fruit of that original illegal stop and search. Therefore, the motion to suppress is sustained.