COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Alston
Argued at Chesapeake, Virginia


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1639-13-1                      JUDGE ROSSIE D. ALSTON, JR.
                                                         FEBRUARY 11, 2014

DAMON AM-JUAN MOSLEY, S/K/A
 DAMON AM-JUAN MOSELY


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                              Mary Jane Hall, Judge

            Steven A. Witmer, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellant.[1]

            Nikeva S. Bailey[2] (The Bailey Law Firm, P.C., on brief), for
            appellee.


        The Commonwealth appeals the trial court's pretrial order granting a motion to suppress

certain evidence seized from defendant, Damon Mosley, after police performed a limited

pat-down frisk of Mosley. On appeal, the Commonwealth argues that the trial court erred in

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The Honorable Mark Herring succeeded Attorney General Kenneth T. Cuccinelli, II, on
January 13, 2014.

        [2] Counsel for Mosley included in the appellee's brief a request that she be appointed as
counsel for Mosley pursuant to Code § 19.2-401 and Code § 19.2-326. Code § 19.2-401,
however, authorizes the circuit court to appoint counsel, not this Court. See Code § 19.2-401
("[W]hen an appeal is taken by the Commonwealth, and the defendant wishes to defend . . . the
*circuit court* shall, where the defendant is indigent, appoint counsel to represent the defendant on
appeal."). Similarly, Code § 19.2-326, which authorizes this Court to "order the payment of . . .
attorney's fees" incurred incident to an appeal, applies only "where[] the judge of the *circuit court*
. . . [first] certifies that the defendant is financially unable to pay his attorney's fees." Code
§ 19.2-326 ("In . . . case wherein the judge of the circuit court, from the affidavit of the defendant
or any other evidence certifies that the defendant is financially unable to pay his attorney's fees,
costs and expenses incident to an appeal, the court to which an appeal is taken shall order the
payment of such attorney's fees."). Our review of the record confirms that counsel for Mosley

granting Mosley's motion to suppress because the pat-down frisk was justified by the officer's reasonable suspicion that Mosley was armed and dangerous.[3] For the reasons that follow, we find that the trial court erred in granting Mosley's motion to suppress and reverse and remand for trial, if the Commonwealth be so inclined.

## BACKGROUND[4]

"In reviewing a trial court's ruling on a suppression motion, we consider the evidence in the light most favorable to the prevailing party below," Mosley in this instance, "granting to it all reasonable inferences fairly deducible therefrom." Askew v. Commonwealth, 38 Va. App. 718, 722, 568 S.E.2d 403, 405 (2002). So viewed, the evidence established the following.

On December 29, 2012, Officers E.A. Ortiz and R.D. Young were on patrol in the Tidewater Gardens neighborhood of Norfolk, Virginia, a public housing neighborhood owned by the Norfolk Redevelopment and Housing Authority ("NHRA"), which Officer Ortiz described as having "a little . . . more crime" than an average neighborhood. Officer Ortiz served as a community resource officer for the Tidewater Gardens neighborhood. In this official capacity, his responsibilities included enforcing the NHRA trespassing regulations and issuing written citations to individuals banned from NHRA property. Under NHRA rules, anyone on NHRA

---

was privately retained at trial. While counsel claims on brief that Mosley is now indigent as a result of his incarceration, the record does not include a certification by the circuit court that Mosley is unable to pay his attorney's fees. Accordingly, we deny counsel's request.

[3] More particularly, the Commonwealth maintains that the trial court erred in holding that the police officer lacked both reasonable suspicion of criminal activity sufficient to justify an investigative detention of Mosley and to think Mosley was armed and dangerous sufficient to justify a pat down for weapons.

[4] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

property who was not named on an NHRA lease and was unaccompanied by an NHRA lease-holder was deemed a trespasser.

At approximately 1:20 p.m., Officers Ortiz and Young pulled into the parking lot of an apartment complex in the Tidewater neighborhood to follow-up on an incident that occurred the previous night. Officer Ortiz reviewed the lease of the apartment unit before conducting his follow-up and confirmed that the only individuals named on the lease were a woman and her child. "The lease . . . state[d] that if you are not with a leaseholder, you are trespassing."

As Officer Ortiz exited his vehicle and began walking toward the apartment complex, he observed Mosley walking from the direction of the apartment unit where the prior night's incident occurred. Officer Ortiz described Mosley as "fit[ting] the description of the individual [who] was at the [apartment unit] the night before," who Officer Ortiz knew to be an habitual trespasser.

As the two men passed one another on the sidewalk, Officer Ortiz asked Mosley which apartment unit he was coming from, and Mosley indicated the unit that Officer Ortiz was approaching. Officer Ortiz also asked Mosley if he had his identification on him, which Mosley provided. Officer Young ran a check on Mosley's identification as Officer Ortiz continued conversing with Mosley.

According to Officer Ortiz, during the encounter, Mosley appeared "a little nervous." "He kept looking around like he was looking for an avenue of escape, talking fast, [and] asking the same questions over again." Officer Ortiz also observed Mosley place his hands in his pockets, which concerned Officer Ortiz. Officer Ortiz requested that Mosley remove his hands from his pockets, and Mosley complied.

As the encounter continued, Officer Ortiz noticed that Mosley had placed his hands back into his pockets. Officer Ortiz told Mosley, "I asked you already, please take your hands out of

- 3 -

your pockets.  I don't know what's in your pockets, sir.  You could have a weapon for all I know."  Mosley complied briefly, before returning his hands to his pockets again.  After asking Mosley to remove his hands a third time, Officer Ortiz became "nervous" and "worried that [Mosley] had a weapon."

Officer Ortiz described at the suppression hearing why he was concerned:  "[It is] their hands [that] kill you.  If somebody puts their hands in their pocket, they could pull out a weapon of any sort, and the hand's concealed.  [I] don't know what's in it at that point."

Worried that Mosley could be hiding a weapon in his pocket, Officer Ortiz decided to conduct a limited pat down of Mosley to ensure that he was not armed.  He explained to Mosley that "he would be more than welcome to put his hands in his pockets" afterward.  As Officer Ortiz initiated the pat down, Mosley asked why he was being arrested.  Officer Ortiz explained that he was not arresting Mosley and that he was only patting him down to make sure he was not armed.

Officer Ortiz testified that as he attempted to perform the pat down, Mosley made repeated attempts to pull away.  Officer Ortiz responded by taking Mosley to the ground.  Officer Ortiz initially lost his grip on Mosley but regained control of Mosley's left wrist as Mosley began reaching toward his body.  As Officer Ortiz struggled with Mosley, Officer Young observed what appeared to be the handle of a handgun inside Mosley's jacket pocket.  Officer Young removed the pistol, at which point Mosley stated, "All right, man.  You got it."  Mosley did not have a permit for the handgun.

Mosley was subsequently indicted for possession of a firearm as a convicted felon, in violation of Code § 18.2-308.2, possession of a concealed weapon, in violation of Code § 18.2-308, and possession of marijuana, in violation of Code § 18.2-250.1.  Thereafter, Mosley filed a motion to suppress evidence recovered during the search of his person.

On August 16, 2013, the trial court issued a letter opinion sustaining Mosley's motion to suppress. The trial court found that the encounter between Mosley and Officer Ortiz remained consensual until Officer Ortiz "grabbed [] Mosley's arm" to conduct a pat down. However, the trial court concluded that Mosley's behavior during the consensual portion of the encounter was insufficient to support "the detention and pat-down of [Mosley,] which yielded the recovery of a weapon," because his behavior did not create a reasonable, articulable suspicion of criminal activity. The trial court issued an order consistent with its letter opinion on August 22, 2013.[5]

The Commonwealth filed its notice of appeal on August 28, 2013, and a transcript of the suppression hearing on September 11, 2013. This appeal followed.

---

[5] The trial court's final order was signed by the trial judge on August 22, 2013, but the order states, "Order Date: August 16, 2013." On appeal, Mosley contends that the final order was entered on August 16, 2013, and asserts that the Commonwealth's August 28, 2013 notice of appeal was untimely. See Code § 19.2-400 (requiring the Commonwealth to file its notice of appeal "within seven days after entry of the order of the circuit court from which the appeal is taken"). We disagree. The trial court's final order was entered on the date it was signed – August 22, 2013. See Rule 1.1 ("The date of entry of any final judgment, order, or decree shall be the date the judgment, order, or decree is signed by the judge."). Accordingly, we find that the Commonwealth timely filed its notice of appeal.

Mosley also requests that the Court dismiss the Commonwealth's appeal because the Commonwealth failed to certify in its initial notice of appeal "that the appeal [wa]s not taken for purposes of delay and that the evidence [wa]s substantial proof of a fact material to the proceeding, as required by Code § 19.2-400." Appellee's Br. at 2. Code § 19.2-400 states, in relevant part, "If the [Commonwealth's pretrial] appeal relates to suppressed evidence, the attorney for the Commonwealth shall certify in the notice of appeal that the appeal is not taken for the purpose of delay and that the evidence is substantial proof of a fact material to the proceeding."

The language in Code § 19.2-400 stating what the notice of appeal "shall" contain is directory only. Roberson v. Commonwealth, 279 Va. 396, 407, 689 S.E.2d 706, 713 (2010) ("Any defect in the notice of appeal that does not touch on its timeliness or the identity of the case to be appealed is procedural only."). Thus, the Commonwealth's failure to timely file the certification described in Code § 19.2-400 is not jurisdictional. See Whitt v. Commonwealth, 61 Va. App. 637, 652, 739 S.E.2d 254, 261 (2013) (*en banc*) (noting that while "[a] late notice of appeal . . . cannot be cured . . . [n]ot all defects in a timely filed notice of appeal . . . will foreclose appellate review"). Here, the Commonwealth filed an amended notice of appeal that included the certification language, and Mosley has not identified any prejudice that he suffered from the late filing of the certificate. Accordingly, we deny Mosley's request to dismiss the appeal and we proceed to the merits.

ANALYSIS

In reviewing the trial court's ruling on a motion to suppress, "'[w]e are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them, [and] we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case.'" Robinson v. Commonwealth, 47 Va. App. 535, 544, 625 S.E.2d 651, 656 (2006) (*en banc*) (quoting McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (*en banc*)).

"The Fourth Amendment to the Constitution of the United States provides, in pertinent part, that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" Jones v. Commonwealth, 279 Va. 521, 527, 690 S.E.2d 95, 99 (2010) (quoting U.S. Const. amend. IV). However, "'[n]ot every encounter that the police have with a member of the public is a seizure.'" Beasley v. Commonwealth, 60 Va. App. 381, 390, 728 S.E.2d 499, 503 (2012) (quoting Washington v. Commonwealth, 29 Va. App. 5, 10, 509 S.E.2d 512, 514 (1999)). "[A] consensual encounter between police and an individual has no fourth amendment implications unless accompanied by such 'coercion or show of force or authority by the officer . . . that would cause a person reasonably to have believed that he or she was required to comply' and 'not free to leave.'" Greene v. Commonwealth, 17 Va. App. 606, 610, 440 S.E.2d 138, 140-141 (1994) (quoting Commonwealth v. Satchell, 15 Va. App. 127, 131, 422 S.E.2d 412, 414 (1992)).

Upon our review of the record, we find that the initial encounter between Officer Ortiz and Mosley was consensual and, thus, did not implicate the Fourth Amendment.[6] The

---

[6] The parties conceded as much on brief and during oral argument. Accordingly, we merely note that Mosley was not seized when Officer Ortiz first approached him, see Jones v. Commonwealth, 52 Va. App. 548, 555, 665 S.E.2d 261, 265 (2008) (noting that an officer does not violate "'the Fourth Amendment prohibition of unreasonable seizures merely by approaching individuals on the street . . . and putting questions to them if they are willing to listen'" (quoting

consensual nature of the encounter changed when Officer Ortiz informed Mosley that he intended to frisk him. See Bandy v. Commonwealth, 52 Va. App. 510, 517, 664 S.E.2d 519, 522 (2008) (holding that "no reasonable person would have felt free to leave" after the officer announced "that he needed to pat [the defendant] down"). "However, the fact that the encounter ceased to be consensual does not necessarily invalidate [a law enforcement officer's] actions." Id.

> The Fourth Amendment prohibits only unreasonable searches and seizures[, and] [i]t is not unreasonable for a police officer to conduct a limited pat-down search for weapons when the officer can point to "specific and articulable facts" "which reasonably lead [] him to conclude, in light of his experience, that criminal activity may be afoot and that the suspect 'may be armed and presently dangerous.'"

Thompson v. Commonwealth, 54 Va. App. 1, 7, 675 S.E.2d 832, 834 (2009) (quoting Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983)) (citations omitted).

We judge reasonableness "'from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation.'" James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (quoting Scott v. Commonwealth, 20 Va. App. 720, 727, 460 S.E.2d 610, 612 (1995)). Thus, a police officer "'need not be absolutely certain that the individual is armed'" to conduct a limited pat down, Commonwealth v. Smith, 281 Va. 582, 589-90, 709 S.E.2d 139, 142 (2011) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Rather, if a "reasonably prudent man in the circumstances would similarly believe that his safety or that of others was in danger, the [pat down] is

---

United States v. Drayton, 536 U.S. 194, 200 (2002))), when Officer Ortiz requested his identification, see McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) ("[A] police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure."), or when Officer Ortiz requested that he remove his hands from his pockets, Jones, 52 Va. App. 548, 665 S.E.2d 261 (holding that the defendant was not seized when the officer repeatedly commanded the defendant to place his hands on the dashboard because the defendant did not submit to the officer's assertion of authority).

justified." Terry, 392 U.S. at 27.  A number of factors are relevant to this inquiry, including actions or behaviors that standing alone would not give rise to a reasonable suspicion, but when aggregated would lead a reasonable officer to conclude that his safety was in danger.  See Roulhac v. Commonwealth, 50 Va. App. 8, 17, 646 S.E.2d 4, 8 (2007) ("The circumstances that a court can consider when determining whether an officer had reasonable suspicion [to conduct a pat down for weapons] include the nature of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating.").

Having thoroughly reviewed the facts of this case, and in light of the above standards, we find that Officer Ortiz's belief that his safety (or that of others) was in danger was warranted and Officer Ortiz was justified in conducting a pat down of Mosley.  At the time he came in contact with Mosley, Officer Ortiz was following up on an incident that occurred at the apartment complex the prior night.  He testified that Mosley fit the description of the person involved in that incident, who Officer Ortiz knew to be an habitual trespasser.  When Officer Ortiz asked Mosley which unit he was coming from, Mosley identified the unit Officer Ortiz was investigating.  Officer Ortiz testified that he reviewed the lease of the apartment unit before conducting his follow-up and confirmed that the only individuals named on the lease were a woman and her child.  He further testified that "[t]he lease clearly states that if you are not with a leaseholder, you are trespassing."  As Officer Ortiz spoke with Mosley, Mosley appeared nervous.  He spoke at a fast rate, frequently repeated the same question, and persistently "looked around like he was looking for an avenue of escape."  Most concerning to Officer Ortiz in light of his training and experience, Mosley repeatedly placed his hands in his pockets despite Officer Ortiz's numerous requests that he not do so.  Officer Ortiz did not "know what [was] in [Mosley's] pockets" and "worried that [Mosley] had a weapon."

In reaching this conclusion, we are mindful of our prior decisions holding that neither nervousness nor placing one's hands into one's pockets is sufficient, standing alone, to justify a frisk for weapons. See Roulhac, 50 Va. App. at 18, 646 S.E.2d at 9 (finding that the defendant's "placing [his] hands into pockets . . . [did] not give [the] officer a reasonable basis to seize" the defendant where the defendant did not "appear nervous" and the "record was silent to appellant's involvement in criminal activity"); Thompson, 54 Va. App. at 8, 675 S.E.2d at 835 (concluding that officer's perception of the defendant's nervousness was insufficient to justify pat down). However, we have before us here circumstances combining nervous behavior and furtive gestures (Mosley's repeated motions toward and in his pockets after being requested not to do so), among other factors, such as Mosley's trespassing on NHRA property, that would lead a reasonable officer to suspect that the defendant was armed. See Bandy, 52 Va. App. at 518-19, 664 S.E.2d at 523 (finding reasonable suspicion for a limited pat down where, among other factors, the defendant appeared nervous, made repeated motions toward his pocket, and looked around as if he was preparing to flee); see also James, 22 Va. App. at 745-46, 473 S.E.2d at 92 (holding that the defendant's "jittery" behavior and repeated hand movements after the officer requested that the defendant keep his hands on the dashboard justified a limited pat down). In light of Mosley's repeated attempts to place his hands in his pockets and Officer Ortiz's perception that Mosley was nervous and looking for an avenue of escape, we find that Officer Ortiz had reasonable, articulable suspicion to believe that Mosley possessed a concealed weapon, which we have previously held, "*ipso facto* rendered [Mosley] potentially armed and dangerous." Jones v. Commonwealth, 52 Va. App. 548, 560-61, 665 S.E.2d 261, 267 (2008).

Mosley's actions during the consensual encounter created a reasonable suspicion that he "possessed a concealed weapon and was, accordingly, armed and dangerous, thus justifying the seizure." Id. at 564, 665 S.E.2d at 269. We find, therefore, that the trial court erred when it

granted Mosley's motion to suppress, and we reverse and remand for trial, if the Commonwealth be so inclined.

Reversed and remanded.