Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Carrico, S.J.

LEONARD TERRELL WHITAKER
                                          OPINION BY
v.  Record No. 090175        SENIOR JUSTICE HARRY L. CARRICO
                                     January 15, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE COURT OF APPEALS OF VIRGINIA

     The primary issue in this appeal is whether the circuit

court erred in denying a defense motion to suppress the evidence

on charges brought against the defendant, Leonard Terrell

Whitaker, in the Circuit Court of the City of Richmond.  The

charges consisted of possession of a firearm while in possession

of a controlled substance (Code § 18.2-308.4(B)), possession

with intent to distribute marijuana (Code § 18.2-248.1),

possession of a firearm after having been convicted of a felony

(Code § 18.2-308.2(A)), and carrying a concealed weapon (Code

§ 18.2-308(A)).

     Following its denial of Whitaker's motion to suppress, the

circuit court in a bench trial convicted him of all the charges

and sentenced him to serve a total term of seven years active

incarceration in the Department of Corrections plus additional

suspended time.  Then, based upon these convictions, the circuit

court held that Whitaker had violated the terms of probation he

had been under for convictions entered against him in 2005.  The

court revoked all of Whitaker's suspended sentences and ordered

that they "run concurrent with each other and with [his] new time."

The Court of Appeals of Virginia awarded Whitaker an appeal. In an unpublished opinion, the court affirmed Whitaker's convictions and, accordingly, held that it "need not further examine whether the trial court erred in revoking [his] suspended sentences." Whitaker v. Commonwealth, Record No. 1859-07-2 (Dec. 23, 2008). We awarded Whitaker this appeal.

BACKGROUND

The evidence presented at the hearing on the motion to suppress shows that on November 17, 2006, City of Richmond Police Officer Clyde Lindsey and two of his partners, Officers Marshall Young and Thomas Gilbert, along with another officer, were patrolling in an unmarked police car in a "very high crime area, very high drug area" of the city. Numerous shootings had occurred in the area. Also, "[a] lot of drug activity goes on there"; it was an "open-air drug market"; the officers had made numerous drug arrests "right there in that particular block."

The officers were clad in street clothes and were wearing placards[*] with "Richmond Police" and a badge "about a foot tall"

_____

[*] As described by Officer Lindsey, in these circumstances a "placard" is a type of vest typically worn by police officers when conducting traffic control. With high visibility print and symbols it identifies the wearer as being a police officer and also specifies the particular law enforcement agency for which the officer works.

2

imprinted on the front and back. As the officers approached the intersection of 27th and P Streets, they observed a group of men, four in number, some sitting and some standing, on a sidewalk bordered by a chain link fence with a house "right behind it." Whitaker was one of the group.

The officers exited their vehicle and went up to the men to "investigate trespassing and also to speak to them about . . . blocking the sidewalk." Officer Lindsey then went to the front door of the house to ascertain from the occupant whether the four men were trespassing. He had responded previously to the occupant's complaints about people trespassing on her property. Officer Lindsey knocked twice, but received no response.

After a period of about ninety seconds, Officer Lindsey returned to the sidewalk and Officer Gilbert asked him "where is [Whitaker] going." Officer Lindsey turned and saw that Whitaker "was on his bicycle" going away from the officers and around the corner of 27th and P Streets. Officer Lindsey followed on foot and when he got around the corner he saw that Whitaker had abandoned his bicycle and was running down an alley. Officer Lindsey began running after Whitaker.

Officers Gilbert and Young tried to follow in their police car, which they found difficult, so they exited the car and joined Officer Lindsey in running after Whitaker. The officers

3

were behind Whitaker as he ran across a field, "looped" around several houses and a church, and jumped over two fences.

Officer Lindsey observed nothing unusual about the way Whitaker ran, but Officers Gilbert and Young both noticed that Whitaker was holding the right hand pocket of his jacket as he ran, leading Officer Gilbert to think "it was a firearm."

After Whitaker had run about two blocks, he slipped on some loose gravel in a parking lot and fell to the ground. Officer Lindsey "proceeded to kneel down on top of Mr. Whitaker." Officer Gilbert arrived on the scene at the same time as Officer Lindsey, and in a "few seconds" Officer Young "caught up."

Officer Gilbert assisted Officer Lindsey in trying to place handcuffs on Whitaker. While the handcuffing effort was in progress, Whitaker tried to reach around to his right jacket pocket and Officer Lindsey told Officer Gilbert to "watch his right hand[; h]e's trying to get something out of his pockets." Whitaker then said: "Sir, I've got a firearm in my pocket."

The firearm was retrieved from Whitaker's pocket, and he was placed under arrest for carrying a concealed weapon. Officer Young then conducted a search of Whitaker's person. The search disclosed quantities of what later was determined to be marijuana and cocaine in Whitaker's right front pants pocket. Cash in the total amount of $713.00 was found in his left rear pants pocket.

4

DISCUSSION

The Fourth Amendment to the Constitution of the United States provides in pertinent part that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The following appellate standard of review is applicable in deciding a claim that evidence was seized in violation of the Fourth Amendment:

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.

Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009) (quoting Malbrough v. Commonwealth, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008)).

> Two types of seizures of the person are protected by the Fourth Amendment – an arrest and an investigatory stop. A police officer may seize a person by arrest only when the officer has probable cause to believe that the person seized has committed or is committing a crime. In order to justify the brief seizure of a person by an investigatory stop, a police officer need not have probable cause; however, he must have "a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity." In determining whether a police officer had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity, a court must consider the totality of the circumstances.

5

Ewell v. Commonwealth, 254 Va. 214, 216-17, 491 S.E.2d 721, 722-23 (1997) (citations and internal quotation marks omitted).

> [The] evaluation of the proper balance that has to be struck in this type of case [is] that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry v. Ohio, 392 U.S. 1, 27 (1968) (citations omitted).

Whitaker advances three arguments, as follows:

I.   The police did not have reasonable articulable suspicion to seize Whitaker.

II.  The seizure of the drugs was not justified as a search incident to a lawful arrest.

III. The revocation order should be reversed because the new convictions at issue in this appeal were the sole basis for the revocation and those convictions should be reversed.

We disagree with Whitaker on all scores.

## I. ARTICULABLE SUSPICION

In Illinois v. Wardlow, 528 U.S. 119 (2000), the Supreme Court in a very similar case outlined what is appropriate in determining whether an officer had a particularized and

6

objective basis for suspecting that the person stopped may be involved in criminal activity.  The court stated as follows:

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.  But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.  Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" [is] among the relevant contextual considerations in a Terry analysis.
>
> In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police.  Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.  Headlong flight – wherever it occurs – is the consummate act of evasion:  It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.  In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers . . . . [T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

Wardlow at 124-25 (citations omitted).

In a concurring and dissenting opinion in Wardlow, Justice Stevens pointed out that the State of Illinois had asked the Court to announce a *per se* rule authorizing the temporary detention of anyone who flees at the mere sight of a police officer while the defendant had asked for the opposite per se rule, one holding that flight upon seeing police can never, by itself, be sufficient to justify a temporary investigatory stop.

Justice Stevens noted that the Court had "wisely endorse[d] neither *per se* rule," but had adhered "to the view that '[t]he concept of reasonable suspicion' . . . must be determined by looking to 'the totality of the circumstances – the whole picture.' "  528 U.S. at 126-27 (Stevens, J., concurring and dissenting).

Thus, while a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration in a <u>Terry</u> analysis.  And while headlong flight is not necessarily indicative of wrongdoing, it is a pertinent factor in determining reasonable suspicion.

In the present case, while we have a showing of both the relevant contextual consideration of a high crime area and the pertinent factor of headlong flight, it is not necessary to decide whether this showing, without more, is sufficient to support a reasonable particularized suspicion because, in this case, there is more.

First is Whitaker's unusual behavior in abandoning his bicycle, his own personal property, at the outset of the chase. He must have considered that it impeded a quicker getaway, that he could elude the police better on foot. Added to this factor is Whitaker's evasive behavior in looping around houses, running

8

behind a church, and jumping over two fences in his seemingly frantic determination to elude the police.

Next is Whitaker's holding onto his right jacket pocket as he ran, the same pocket from which a firearm was later retrieved.  He says that we should not consider this bit of evidence because only Officers Gilbert and Young observed Whitaker holding his pocket and they did not tell Officer Lindsey about it and he was the one who detained Whitaker.  But Officers Gilbert and Lindsey worked together in detaining Whitaker and Officer Young conducted the search of Whitaker's person that disclosed the presence of drugs in his pocket, so it was a joint police undertaking and the testimony of both Officer Gilbert and Officer Young was relevant to the issues involved in the case.  Moreover, Whitaker did not object to the testimony when it was offered.  Rule 5:25.

Then there is Whitaker's admission, unusual and unexpected under the circumstances, that he had a firearm in his pocket. This admission was made while Officers Lindsey and Gilbert were still trying to detain Whitaker but before they were able to subdue him.  The statement was spontaneous on Whitaker's part, made without interrogation by or coercion from the police.

As noted previously, in determining whether Officer Lindsey had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity, a court

must consider the totality of the circumstances.  Considering the totality of the circumstances involved in this case, we are of opinion that the evidence is sufficient to support the conclusion that Officer Lindsey, even before Whitaker fell and Officer Lindsey proceeded to detain him, had a reasonable particularized suspicion that Whitaker may be involved in criminal activity.  There is just no conceivable reason for Whitaker's evasive behavior other than to evade the police and avoid discovery of the contraband hidden on his person.

## II.  SEARCH INCIDENT TO ARREST

Whitaker argues that the "seizure [of the drugs] rose 'to the level of a full custodial arrest,' " and even if his detention and the removal of his firearm were justified by reasonable suspicion, the seizure of the drugs was not justified as a search incident to a lawful arrest for possession of a concealed weapon because that arrest was "not supported by probable cause."  It is not a crime to possess a weapon, Whitaker says, and without verification that he did not have a weapons permit the police lacked probable cause to arrest him for violating the concealed weapons statute.

Countering, the Commonwealth says that Whitaker did not raise this argument in the circuit court.  Whitaker claims that he did make the argument but states on brief that "the trial court does not appear to have expressly ruled on this argument."

10

In any event, we will assume, without deciding, that the seizure of the drugs did rise to the level of a full custodial arrest. We are of opinion that Whitaker's arrest for carrying a concealed weapon was lawful because it was supported by probable cause supplied by his spontaneous statement that he had a firearm in his pocket. This statement justified the search of his person for other weapons, during which the presence of the drugs was disclosed.

Proof of probable cause does not require evidence sufficient to show guilt beyond a reasonable doubt. Maryland v. Pringle, 540 U.S. 366, 371 (2003). The fact that Whitaker might not have been convicted on the concealed weapons charge at a later trial on a showing he had a permit does not affect the viability of the probable cause to arrest in the first instance.

### III. REVERSAL OF REVOCATION OF PROBATION

Since Whitaker's argument on the propriety of the revocation of his probation is conditioned upon our reversal of his new convictions and we intend to affirm those convictions, we need not give further consideration to the argument.

### CONCLUSION

As noted previously, in reviewing the denial of a motion to suppress claiming a violation of a person's Fourth Amendment rights, the burden is on the defendant to show that the trial court committed reversible error. Whitaker has failed to carry

11

this burden.  Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.
