UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges McCullough and Decker
Argued by teleconference

TREMONE MINTER

v.       Record No. 1739-13-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
DECEMBER 2, 2014

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Chad G. Dorsk (Dorsk Law Office, PLC, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Tremone Minter was convicted on a conditional plea of guilty of possession of a firearm

by a felon in violation of Code § 18.2-308.2.  The appellant contends that the trial court erred in

denying his motion to suppress evidence because law enforcement had no legal basis to conduct

a pat down of his person.  We hold that the seizure and subsequent pat down violated the

appellant's rights under the Fourth Amendment to the United States Constitution and reverse the

conviction.

I.  BACKGROUND

"When reviewing a denial of a motion to suppress evidence, an appellate court considers

the evidence in the light most favorable to the Commonwealth and will accord the

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012). So viewed, the evidence established the following.

On October 30, 2012, Officer R. Dyer and Detective K. Adams of the Portsmouth Police Department were on routine patrol in the Port Norfolk area. They were traveling in a dark blue Chevy Tahoe unmarked police vehicle with tinted windows. At approximately 5:45 p.m., Officer Dyer saw the appellant walking in a public parking lot. It was not dark out, but rather "in between day and night." The parking lot was used by tenants of a nearby three-story apartment building.

Detective Adams was driving the vehicle. The officers were travelling at a rate of speed of "probably less than ten miles an hour," and were "just kind of trolling through the streets." Officer Dyer did not see anyone in the area selling drugs. As the police vehicle approached the entrance to the parking lot, the appellant started to walk faster and repeatedly looked over his shoulder at the slow moving unmarked Tahoe. The appellant appeared to "be very interested in [the unmarked police] vehicle." He "[sped] up his gait when [the Tahoe] pulled in, almost as if he was going to flee." The appellant was so focused on watching the vehicle that he walked through a section of water and mud in a construction zone in the parking lot.

The officers pulled into the parking lot without activating the vehicle's emergency lights. Officer Dyer, who was dressed in plain clothes, got out of the Tahoe, "pulled [his] badge around [his] neck," and identified himself as a police officer. Dyer asked the appellant, "Hey, man, can I talk to you." The appellant stopped walking in the direction he was travelling, turned around, and approached the officer. Officer Dyer asked the appellant his name, and the appellant provided his correct name. Dyer then asked what the appellant was doing and where he was going. The appellant responded that he was going to his house to get his children. According to the officer, the appellant seemed very concerned about getting home to his children. The officer

described the appellant as being "extremely nervous," "visibly shaking," and "kind of stumbling and stammering over his words" during their conversation. Dyer explained that the appellant did not answer the questions; he "just reverted to [talking about] his kids."

The appellant was wearing a "large, fluffy, puffy jacket," which was not "out of the ordinary" to Officer Dyer since it was the end of October. However, this large jacket concealed what was underneath it. Dyer did not notice any bulges in the appellant's clothing, nor did the clothing seem "unusual."

Detective Adams parked the vehicle and walked over to Officer Dyer and the appellant shortly after Dyer made contact with the appellant. Adams also was in plain clothes and had his badge displayed around his neck. Neither Officer Dyer nor Detective Adams ever drew his weapon during their interaction.

Dyer was conversing with the appellant while Adams was "looking around, just making sure nobody would run up on [them]." Detective Adams was not interacting with the appellant and did not remember the conversation that occurred between the appellant and Officer Dyer. In response to a question of whether the encounter made him nervous, the detective testified that his "own wife makes [him] nervous. . . . [E]veryone [he] come[s] into contact with makes [him] nervous, because [he does not] know them, they don't know [him]."

While speaking with Officer Dyer, the appellant reached into his pocket twice. Dyer "told [the appellant] on both occasions to not reach into his pockets." After the second time the appellant put his hands into his pockets, the officer told him that he was making the officer nervous by doing so. Dyer then told the appellant that he was going to pat him down to make sure he did not have any weapons. Officer Dyer testified that he decided to conduct a pat down for weapons due to the appellant's nervousness and his large, puffy jacket. Dyer feared that the appellant had some type of weapon.

Officer Dyer placed the appellant's interlaced hands on the back of his head. Prior to actually initiating the pat down, Dyer asked the appellant if he had any weapons, and the appellant said that he did. When Dyer conducted the pat down, he found a Bersa .380 caliber pistol in a holster on the right side of the appellant's waistband. The weapon had been concealed from the officer's view during the encounter.

Prior to trial, the appellant filed a motion to suppress the weapon as evidence. The trial court denied the motion, and the appellant entered a conditional guilty plea pursuant to Code § 19.2-254, preserving his right to appeal the alleged violation of his Fourth Amendment rights. He was sentenced to five years in prison.

## II. ANALYSIS

The appellant contends he was unlawfully seized because law enforcement officers had no reasonable articulable suspicion that he was engaged in criminal activity and there was no evidence to suggest that he was armed and dangerous.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." Id. at 197-98, 487 S.E.2d at 261 (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). Likewise, "whether a defendant is seized in violation of the Fourth Amendment is a question that is reviewed *de novo* on appeal." Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002). However, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and

we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

The appellant contends he was seized by Officer Dyer and Detective Adams when they approached him in the parking lot and started asking him questions. The Commonwealth argues that the encounter was initially consensual.[1]

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with the reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Therefore, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "Rule 5A:18 applies to bar even constitutional claims." Id. Further, "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citations omitted), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004).

The appellant did not argue in his motion to suppress the evidence that the initial encounter was a seizure. Instead, he contended that he was cooperating with police during a consensual encounter, and without evidence of criminal activity or his being armed and dangerous, this encounter did not provide justification for a pat down. Likewise, at the suppression hearing, the appellant argued that once Officer Dyer conducted the pat down, "[a]t this point the encounter is no longer consensual." Consequently, since the appellant did not

---

[1] At oral argument the Commonwealth asserted that the appellant's challenge to the consensual nature of the encounter is barred from this Court's consideration by Rule 5A:18.

challenge in the trial court the consensual nature of the initial encounter, we will not consider this argument on appeal.[2]

The appellant also contends that, even if the initial encounter was consensual, he was unlawfully seized once Officer Dyer interlaced his hands and placed them behind his head, in preparation for a pat down for weapons. He argues that these actions were not based on a reasonable articulable suspicion that he was engaged in criminal activity and armed and dangerous. Thus, the appellant suggests, the trial court erred in refusing to suppress the firearm.

The Commonwealth argues that Officer Dyer had reasonable suspicion to justify a seizure and protective pat down for weapons. According to the Commonwealth, by the time that Officer Dyer placed the appellant's hands behind his head, the officer had a reasonable articulable suspicion that the appellant might be armed and dangerous.

The law in this area is well established, and application of this law is based on the unique facts of each case. The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, the Fourth Amendment prohibits only unreasonable searches and seizures. See, e.g., Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008); Roberts v. Commonwealth, 55 Va. App. 146, 152, 684 S.E.2d 824, 827 (2009).

> Fourth Amendment jurisprudence "has placed police-citizen confrontations into three categories." Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988). "First, there are communications between police officers and

---

[2] The appellant does not argue that the "ends of justice" exception to Rule 5A:18 should apply, and we do not address that very limited exception *sua sponte*. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448. In addition, our review of the record does not reveal any reason to invoke the "good cause" exception to Rule 5A:18. See Andrews v. Commonwealth, 37 Va. App. 479, 494, 559 S.E.2d 401, 409 (2002) (holding that the "good cause" exception did not apply because the appellant had the opportunity to bring his claim to the attention of the trial court but failed to do so).

> citizens that are consensual and, therefore, do not implicate the [F]ourth [A]mendment." Id. Second, are "brief investigatory stops" based upon "specific and articulable facts," and third, are "highly intrusive, full-scale arrests" based upon probable cause. Id.; see also United States v. Alpert, 816 F.2d 958, 960 (4th Cir. 1987).

Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992).

"The consensual encounter becomes a seizure '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980); see also McLellan v. Commonwealth, 37 Va. App. 144, 151, 554 S.E.2d 699, 703 (2001). Circumstances to consider in evaluating whether a reasonable person would believe he was not free to leave include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554.

A consensual encounter can lawfully turn into a brief investigatory stop or seizure when an officer has a reasonable articulable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). However, reasonable suspicion of criminal activity alone does not justify a pat down of the suspect for weapons. Before an officer is permitted to lawfully conduct a pat down, he must be able to "'point to particular facts from which he reasonably inferred that the individual was armed and dangerous.'" Williams v. Commonwealth, 4 Va. App. 53, 66-67, 354 S.E.2d 79, 86 (1987) (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)).

- 7 -

Therefore, a police officer may conduct a pat-down search for weapons only "if the officer can point to specific and articulable facts which reasonably lead him to believe criminal activity may be afoot *and* the person subjected to the search may be armed and dangerous." Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000) (emphasis added); see also Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979) (concluding that Terry does not authorize "a generalized 'cursory search for weapons'"); United States v. Burton, 228 F.3d 524, 528 (4th Cir. 2000) ("[A]n officer may encounter citizens and attempt to question them without implicating the Fourth Amendment. But during such police-citizen encounters, an officer is not entitled, without additional justification, to conduct a protective search. To conduct such a protective search, an officer must first have reasonable suspicion supported by articulable facts that criminal activity may be afoot.").

We hold that the appellant was seized when the officer told the appellant that he would be conducting a pat-down search and placed the appellant's hands, interlaced, behind his head. At that point, based on the facts in this case, a reasonable person would not have believed he was free to leave. See California v. Hodari D., 499 U.S. 621, 626-28 (1991) (holding that an individual must be under some physical restraint by an officer or have submitted to the show of police authority for a seizure to occur); Roulhac v. Commonwealth, 50 Va. App. 8, 16, 646 S.E.2d 4, 8 (2007) (finding that the initial consensual encounter between law enforcement and a suspect became a seizure when the officer grabbed the suspect's wrist); Walker v. Commonwealth, 42 Va. App. 782, 790, 595 S.E.2d 30, 34 (2004) (finding a seizure occurred when an officer "explained that he intended to pat down" a suspect because, "at this point, a reasonable person would not believe he could ignore the officer's requests and walk away").

The next step in the Fourth Amendment analysis is to determine whether the officer had a reasonable articulable suspicion that the appellant may have been involved in criminal activity at

the time of the seizure, which in this case was immediately prior to the pat down. Here, the potential "criminal activity [that] may [have been] afoot" was the suspicion that the appellant was carrying a concealed weapon in violation of Code § 18.2-308(A). The inquiry regarding whether an officer has a reasonable suspicion that an individual has a concealed weapon is the same question as whether there is reasonable suspicion that the person is armed and dangerous. See Jones v. Commonwealth, 52 Va. App. 548, 560-61, 665 S.E.2d 261, 267 (2008) ("[W]e conclude the officers, at the time of [the defendant's] seizure, had a reasonable articulable suspicion that [the defendant] possessed a concealed weapon and . . . a reasonable suspicion of that offense *ipso facto* rendered him potentially armed and dangerous."); see also Beasley v. Commonwealth, 60 Va. App. 381, 398, 728 S.E.2d 499, 507 (2012) (holding that the circumstances created a reasonable suspicion that the suspect was involved in potential criminal activity, including possible possession of a concealed weapon, which would therefore render him potentially armed and dangerous); Andrews v. Commonwealth, 37 Va. App. 479, 492, 559 S.E.2d 401, 408 (2002) (concluding that the officer had a reasonable belief that the suspect was possibly carrying a concealed weapon, warranting the stop and pat down for weapons "to protect himself and others who might be in danger"). Therefore, in the context of this case, we need only determine whether Officer Dyer had a reasonable articulable suspicion that the appellant possessed a concealed weapon, thus rendering him potentially armed and dangerous.

"In determining whether a police officer had reasonable suspicion to justify an investigatory stop and pat-down search, we must view the circumstances 'available to the officer' at the time of the seizure and search through the eyes of a reasonable person." Andrews, 37 Va. App. at 491, 559 S.E.2d at 407 (quoting Christian v. Commonwealth, 33 Va. App. 704, 711-12, 536 S.E.2d 477, 481 (2000) (*en banc*)). Additionally, an officer is permitted "to view the circumstances confronting him in light of his training and experience, and he may consider

any suspicious conduct of the suspected person." James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citation omitted).

"The circumstances that a court can consider when determining whether an officer had reasonable suspicion include the nature of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating." Roulhac, 50 Va. App. at 17, 646 S.E.2d at 8; see also Walker, 42 Va. App. at 791-92, 595 S.E.2d at 34. "Nervous, evasive behavior is [a] pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). However, "mere nervousness during the course of a Terry stop, 'standing alone, is insufficient to justify a frisk for weapons.'" Baker v. Commonwealth, 57 Va. App. 181, 190, 700 S.E.2d 160, 164 (2010) (quoting McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008)).

Based upon the facts of this case, and in light of the applicable legal standards, we find that Officer Dyer acted unlawfully when he seized the appellant in order to conduct the pat-down search. In the instant case, the facts did not provide an objectively reasonable basis for suspecting that the appellant possessed a concealed weapon at the time of the seizure, even when giving "due weight to the inferences drawn from [the] facts by . . . local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261. Officer Dyer testified that the appellant was "very interested" in the police Tahoe and kept looking back at it as he walked across the parking lot. When the officers pulled into the lot, the appellant started to walk faster, "almost as if he was going to flee," and even walked through a section of water and mud. These actions occurred before the officer got out of his *unmarked* Chevy Tahoe and approached the appellant.

As the officer engaged the appellant in a conversation, the appellant walked back over to the officer, provided his correct name, and answered Dyer's question about where he was going.

- 10 -

According to Officer Dyer, the appellant, upon further questioning, seemed "extremely nervous," was "visibly shaking," and "kind of stumbling and stammering over his words." He did not specifically answer Dyer's questions. Instead, he repeatedly told the officer that he needed to go home to his children. Additionally, the appellant twice disregarded Officer Dyer's instruction not to place his hands into his pockets. Though these circumstances may have provided the officer with a hunch that the appellant might have been carrying a concealed weapon, they alone did not establish the reasonable suspicion necessary to justify a seizure in order to conduct a pat-down search.

Officer Dyer did not observe criminal behavior by the appellant and had not been given any information connecting the appellant to such activity. The appellant was simply walking through a parking lot near an apartment building. Although he kept looking at the unmarked Tahoe and started walking faster, he did not flee. In fact, when the officer got out of the vehicle, displayed his badge and asked to speak with the appellant, he complied and walked back to the officer.

The appellant did twice disobey Dyer's request to keep his hands out of his pockets. However, there was no indication that the appellant's pocket contained a weapon or that the appellant was concealing a weapon with his coat. Officer Dyer specifically testified that he did not observe any bulges on the appellant's clothing, nor did the clothing seem unusual to the officer for the weather and time of year. Further, the encounter took place at 5:45 p.m., rather than during the late hours of the evening. The appellant was walking through a public parking lot, and there was no indication that he was trespassing. Additionally, there was no evidence that the contact took place in a high-crime area. See Whitaker v. Commonwealth, 279 Va. 268, 276, 687 S.E.2d 733, 737 (2010) ("[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual

consideration in a <u>Terry</u> analysis."). Nor was there evidence that the appellant was engaged in drug activity. <u>See</u> <u>Williams</u>, 4 Va. App. at 67, 354 S.E.2d at 87 ("[S]uspicion of narcotics possession and distribution . . . , standing alone, gives rise to an inference of dangerousness . . . ."). Rather, Officer Dyer specifically testified that he did not observe any drug activity in the area where the encounter occurred. In fact, according to Dyer, the officers were "just kind of trolling through the streets."

Concerning officer safety, Detective Adams testified to a generalized fear of everyone, including his wife, when asked whether the parking lot encounter made him nervous. Regarding his own fears, Officer Dyer said that he became nervous when the appellant twice refused to keep his hands out of his pockets. He decided to conduct the pat down due to the appellant's nervousness and the fact that he was wearing a large, puffy jacket that the officer admitted was not out of place for the weather and the time of year. The appellant's admission that he had a weapon on his person came only after he was seized by the officer. The record contains no factual findings by the trial court or any evidence regarding the training and experience of these officers. Under these circumstances, the appellant's nervous behavior, distracted responses to questions while focusing instead on getting to his children, and disregard for Officer Dyer's instructions during a consensual encounter, without additional factors, did not support a reasonable suspicion that the appellant possessed a weapon. <u>See</u> <u>Burton</u>, 228 F.3d at 528-29 (holding that an officer's search for weapons was not supported by reasonable suspicion where the defendant failed to answer the officer's questions and refused to take his hand out of his coat pocket even though the officer testified he felt uneasy about his safety); <u>cf.</u> <u>Thompson v. Commonwealth</u>, 54 Va. App. 1, 11-12, 675 S.E.2d 832, 836-37 (2009) (concluding that loitering in an "open market for drug sales" and extreme nervousness when approached by an officer was insufficient, without additional factors, to establish reasonable suspicion for a pat down).

The Commonwealth cites several cases in support of its argument that the officer had reasonable suspicion that the appellant possessed a weapon at the time of the pat down. However, in each case cited, there were more factors that led to the conclusion that reasonable suspicion existed at the time of the seizure and search. All of the cases, barring one, include evidence of possible drug activity or a high crime area, neither of which exists in this case.[3] "The common thread in those cases involving high crime areas and nervous behavior is the specific act of a furtive gesture to suggest that the suspect is armed." Thompson, 54 Va. App. at 10, 675 S.E.2d at 836. See also Beasley, 60 Va. App. at 395-97, 728 S.E.2d at 506-07 (holding that there was reasonable suspicion to justify seizure when encounter occurred during the middle of the night in a high crime area, there was suspicion that the defendant was trespassing, the defendant and the other passengers in the vehicle engaged in furtive movements as the officer approached the vehicle, and the defendant continued to move his hand in a suspicious manner after the officer had instructed him to place his hand on his lap); Jones, 52 Va. App. at 552-67, 665 S.E.2d at 263-70 (holding that there was reasonable suspicion for pat down when police encountered the defendant in parking lot of hotel known for drug trafficking, there was suspicion of drug activity, and he reached for the floorboard three times after being told to place his hands on the vehicle's steering wheel); Walker, 42 Va. App. at 791-92, 595 S.E.2d at 35 (holding that there was reasonable suspicion for pat down where the defendant was in an area known for drug

---

[3] The only case cited without evidence of a high-crime area or drug activity, James v. Commonwealth, 22 Va. App. 740, 473 S.E.2d 90 (1996), included additional factors justifying a pat down that are not present here. In James, officers stopped a vehicle because they knew about an outstanding felony warrant for the driver. Id. at 744, 473 S.E.2d at 91. The defendant, a passenger in the front seat of the vehicle, was "making gestures" with his hands and leaned down where the officer could see only one of the appellant's hands. Id. The officer told the defendant to place his hands on the dashboard, which he refused to do. Id. at 744, 473 S.E.2d at 91-92. He then placed his hands on the dashboard but left them there for only "a few seconds." Id. at 744, 473 S.E.2d at 92. We find the fact that the officers were executing a felony warrant significant, as it suggested that danger to the officer might have been present. Further, the defendant's presence in a vehicle, with one hand hidden during part of the encounter, and his non-compliance with the officer's instructions provided additional factors supporting a pat down in James.

activity at night, had something in his left hand that he attempted to hide in someone else's pocket as the officer approached him, refused to remove his hand from his own pocket when asked to do so by the officer, appeared extremely nervous, and the officer suspected that he possessed narcotics); Andrews, 37 Va. App. at 484-92, 559 S.E.2d at 404-08 (holding that there was reasonable suspicion for pat down where encounter took place in an area that had several recent armed robberies, the defendant walked away from his companions when they began talking to police officers, refused to give the officer his address and gave him an obviously incorrect age, and had a heavy object in the center pocket of his jacket that he appeared to be trying to conceal which the officer suspected was a firearm); Welshman v. Commonwealth, 28 Va. App. 20, 34-35, 502 S.E.2d 122, 129 (1998) (*en banc*) (holding that there was reasonable suspicion for pat down where the encounter took place in an area known for violence and drug-related crime and the defendant refused to extend his hands from his body and instead placed them under his torso, giving the officer a reasonable belief that the defendant might be armed and dangerous).

As the cases cited by the Commonwealth demonstrate, the decision regarding whether an officer has reasonable suspicion that an individual may be armed and dangerous is driven by the specific facts. Appellate courts give great deference to the officers' decisions in the street and the trial court's factual findings. Doing so in this case, however, we must conclude that the articulated circumstances did not provide a sufficient basis for Officer Dyer to form a reasonable suspicion that the appellant possessed a concealed weapon. This Court is mindful of the delicate balance between law enforcement safety and the rights of the citizenry. We understand that "[r]easonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995). Although "we

understand the daily challenges faced by members of the law enforcement community, courts must remain vigilant to 'not allow our zeal for effective law enforcement to blind us to the peril to our free society that lies in [our] disregard of the protections afforded by the Fourth Amendment.'" Buhrman, 275 Va. at 507, 659 S.E.2d at 328-29 (quoting Florida v. Royer, 460 U.S. 491, 513 (1983) (Brennan, J. concurring)).

The officers in this case simply did not articulate sufficient facts to objectively justify the conclusion that Officer Dyer had a reasonable suspicion that the appellant possessed a concealed weapon at the time of the seizure. Consequently, the seizure and pat down that immediately followed violated the appellant's Fourth Amendment rights.

### III. CONCLUSION

We hold, based upon the unique facts of this case, that the trial court erred in denying the appellant's motion to suppress evidence. In light of the appellant's conditional guilty plea entered pursuant to Code § 19.2-254, we remand this case to afford him the opportunity to withdraw his plea.[4]

Reversed and remanded.

---

[4] Code § 19.2-254 provides that "a defendant may enter a conditional plea of guilty in a misdemeanor or felony case in circuit court, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea."