COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Lorish and White
Argued at Norfolk, Virginia


BRANDON DAJUAN ANTHONY
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1000-23-1                   JUDGE JUNIUS P. FULTON, III
                                                        SEPTEMBER 3, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Charles E. Haden for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


The trial court convicted Brandon Dajuan Anthony on his conditional guilty pleas of

possession of a firearm after being convicted of a violent felony and possession of a Schedule I

or II controlled substance. On appeal, he argues the trial court erred by denying his motion to

suppress evidence police obtained during a warrantless seizure and search of his person. Finding

no reversible error, we affirm the trial court's judgment.

BACKGROUND[1]

On December 19, 2019, Newport News Police Officer Thomas Allen received a call from

another officer relaying a tip from a confidential informant, who reported that there were two armed

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "When considering a challenge to the denial of a motion to suppress [on appeal], we
'view the evidence in the light most favorable to the prevailing party, the Commonwealth, with
all inferences fairly deducible from that evidence accorded to the Commonwealth.'" *Parady v.
Commonwealth*, 78 Va. App. 18, 24 n.1 (2023) (quoting *McArthur v. Commonwealth*, 72
Va. App. 352, 359 (2020)).

men in a car parked outside a convenience store. The informant described the car's color and license plate number and said that one of the men was a convicted felon and both "were in possession of concealed handguns."

In response to the call, Officer Allen and his partner, Officer Nemanja Bogdanovic, drove to the store wearing police uniforms displaying their badges of authority. A car matching the informant's description was parked nearby. Two other officers had arrived already and were speaking to the car's driver and sole occupant, a black male.

Assuming that the driver of that vehicle was one of the suspects described in the tip, Officers Allen and Bogdanovic went inside the store to search for his "missing" passenger. Five men were inside the store. One of the men, Anthony, was standing near "the back" holding a cell phone to his ear with his right hand. Allen and Bogdanovic approached Anthony because they saw him repeatedly "glancing" at them "out of the corner of his eyes." Allen walked behind Anthony while Bogdanovic approached Anthony from the opposite direction. Anthony walked away from Officer Allen at what he described as "an L." When Bogdanovic approached him from the opposite direction, Anthony "backpedaled" and walked down a different aisle. As he did so, the officers saw Anthony's "left hand" move toward a shelf containing bags of chips. The bags moved and the officers heard a "loud clanking sound" like "a hard object making contact with the shelf" directly beneath Anthony's hand. Officer Allen went to the shelf and saw a "black firearm" lying there.

The officers handcuffed Anthony and said that he was "being detained." Officer Bogdanovic accused Anthony of having possessed the firearm. About a minute later, after receiving *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings and confirming he understood his rights, Anthony said that he previously had been convicted of robbery. Officer Bogdanovic searched Anthony and found "suspected narcotics" in Anthony's pants pocket. The officers formally placed Anthony under arrest and transported him to jail, where he was charged with possession of a firearm

after being convicted of a felony and possession of a concealed weapon. Subsequent forensic testing confirmed that the suspected narcotics found in Anthony's pocket contained heroin, a Schedule I controlled substance.

A grand jury indicted Anthony for possession of a firearm after being convicted of a violent felony, simultaneous possession of a firearm and a Schedule I or II controlled substance, possession of a Schedule I or II controlled substance, and possession of a concealed weapon. Before trial, Anthony moved to suppress the firearm and drugs, arguing that they were the fruit of an unconstitutional seizure. At the hearing, the Commonwealth introduced a video from Officer Bogdanovic's body-worn camera depicting Anthony's arrest.[2] Officers Allen and Bogdanovic testified that they went to the store in response to an informant's tip, but neither officer described the basis of the informant's knowledge or history of reliability. The officers acknowledged that when they searched the store for the second suspect, they "didn't know who [they] . . . were looking for." The officers also acknowledged that they had assumed that Anthony was one of the men described in the tip based solely on his nervous demeanor. Neither officer knew Anthony's identity when they handcuffed him; nor did they receive any information from the informant indicating that Anthony, specifically, was ineligible to possess a firearm or did not have a concealed weapon permit. Officer Allen testified that he and Bogdanovic originally had intended merely to "speak to" Anthony, but they detained him for further investigation once they heard him discard the firearm. Allen confirmed that the officers did not issue any commands to Anthony until they handcuffed him. Neither officer saw a firearm on Anthony's person during their investigation.

---

[2] The video does not show Anthony discard the firearm because items inside the store obstructed the view of Officer Bogdanovic's body-worn camera. At the suppression hearing, Officer Bogdanovic explained that he could see Anthony's upper body and left arm move toward the shelf where Officer Allen found the firearm because the officer's "eyesight was really higher than the [body-worn] camera," which was on the collar of his uniform.

Anthony argued that the officers effectuated an unlawful de facto arrest by handcuffing him in the store without "probable cause to arrest or a reasonable articulable suspicion of criminal activity." He asserted that the informant's tip did not create the requisite suspicion to justify the seizure because it was "unreliable hearsay" and there was no evidence demonstrating the basis of the informant's knowledge. In addition, Anthony emphasized that neither officer knew his identity or had any information regarding his status as a convicted felon or whether he possessed a valid concealed weapon permit. Anthony asserted that the officers did not see him commit any criminal offense or engage in any conduct connecting him to the tip.

Following argument, the trial court found that "once he laid that gun on the shelf," Anthony violated Code §§ 18.2-56.1 and -56.2, prohibiting reckless handling of a firearm and reckless handling of a firearm endangering children, respectively, by placing his firearm in an area accessible to the public. Thus, the court held that the officers had probable cause to arrest him for those offenses when they handcuffed him in the store. Accordingly, the trial court denied Anthony's suppression motion. The trial court later convicted Anthony of possession of a firearm after being convicted of a violent felony and possession of a Schedule I or II controlled substance on his conditional guilty pleas, preserving his right to appeal the trial court's denial of his motion to suppress.[3]

Adopting his arguments below, Anthony contends on appeal that the trial court erred by denying his motion to suppress the firearm and drugs because they were the fruit of an unlawful de facto arrest or detention unsupported by reasonable suspicion or probable cause. He argues that the record failed to demonstrate that the informant's tip was reliable or otherwise provided reasonable suspicion or probable cause to detain him because the informant "was not a

---

[3] The Commonwealth dismissed the related charges of simultaneous possession of a firearm and a Schedule I or II controlled substance, and possession of a concealed weapon.

disinterested citizen," there "were no corroborative facts," and there were "multiple African[-]American males inside" the store who may have been the individual the officers were looking for. Moreover, beyond the informant's tip, Anthony maintains that the officers "lacked probable cause or a particularized suspicion of other criminal activity" when they seized him. He asserts that the officers did not observe him "engage[] in any criminal activity" before they handcuffed him.

ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "[W]arrantless searches [and seizures] are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions." *Parady v. Commonwealth*, 78 Va. App. 18, 28-29 (2023) (first alteration in original) (quoting *Megel v. Commonwealth*, 262 Va. 531, 534 (2001)). Police detained and searched Anthony without a warrant, so "the Commonwealth ha[d] the burden of proving the legitimacy of [the] warrantless search and seizure." *Id.* (alterations in original) (quoting *Reittinger v. Commonwealth*, 260 Va. 232, 235-36 (2000)). On appeal of the trial court's denial of his motion to suppress, however, Anthony "bears the burden of establishing that reversible error occurred." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016) (citing *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)). We are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). "[W]e 'review[] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment.'" *Parady*, 78 Va. App. at 29 (second alteration in original) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)).

I.  The officers had probable cause to arrest Anthony for violating Code § 18.2-308 when they handcuffed him.

"The Supreme Court of the United States has identified two types of seizures of the person protected by the Fourth Amendment—arrest and investigatory stop." *Baldwin v. Commonwealth*, 243 Va. 191, 195 (1992) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  "Whereas full-scale arrests must be based on probable cause, . . . 'brief investigatory stops,' now known as *Terry* stops, 'must be based on specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant a limited intrusion.'" *Turay v. Commonwealth*, 79 Va. App. 286, 297 (2023) (quoting *Iglesias v. Commonwealth*, 7 Va. App. 93, 99 (1988)).

In his brief, Anthony implies that Officers Allen and Bogdanovic subjected him to a full-scale arrest by handcuffing him in the store and subsequently reading him *Miranda* warnings.  Thus, he asserts that the officers needed probable cause to believe he committed, or was committing, a crime to justify the seizure.  Anthony argues that no such probable cause existed for Officers Allen and Bogdanovic to arrest him for unlawfully possessing a firearm because they did not know Anthony's identity when the seizure occurred.  He emphasizes the fact that neither officer knew that Anthony was a convicted felon or whether he possessed a valid concealed handgun permit until after they had seized him and confirmed his identity.  In addition, Anthony emphasizes that the informant's tip did not give the officers reasonable suspicion to detain him because the tip did not disclose Anthony's identity or otherwise connect him to criminal activity.  We disagree.

Assuming without deciding that Officers Allen and Bogdanovic effectuated a full-scale arrest when they handcuffed Anthony, accused him of illegally possessing a firearm, and read him *Miranda* warnings, the arrest was valid because the officers had probable cause, based on

their observations, to believe that Anthony unlawfully carried a concealed handgun.[4,5] "Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed." *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003) (quoting *Purdie v. Commonwealth*, 36 Va. App. 178, 185 (2001)). The probable cause standard is a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Doscoli v. Commonwealth*, 66 Va. App. 419, 427 (2016) (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). "[I]t deals with probabilities and depends on the totality of the circumstances." *Id.* (quoting *Pringle*, 540 U.S. at 370-71). Consequently, "reasonable law officers need not resolve every doubt about a suspect's guilt before probable cause is established." *Id.* (quoting *Joyce v. Commonwealth*, 56 Va. App. 646, 660 (2010)). In assessing whether an officer had probable cause to arrest a suspect, "a reviewing court must consider 'the totality of the circumstances—the whole picture.'" *Mitchell v. Commonwealth*, 73 Va. App. 234, 247 (2021) (quoting *United States v. Sokolow*, 490 U.S. 1, 8 (1989)) (addressing reasonable suspicion).

---

[4] Obviously neither officer had any knowledge at the time as to Anthony's status as a former felon or whether he had a valid concealed carry permit. However, as the Supreme Court has held previously, this fact is immaterial. *See Whitaker v. Commonwealth*, 279 Va. 268, 277-78 (2010) (holding "[t]he fact that [the defendant] might not have been convicted on [a] concealed weapons charge . . . on a showing he had a permit d[id] not affect the viability of the probable cause to arrest [him for the offense] in the first instance").

[5] Given this conclusion, we do not address whether, as the trial court found, the officers had probable cause to arrest Anthony for reckless handling of a firearm. *See Rickman v. Commonwealth*, 294 Va. 531, 542 (2017) (recognizing that the "right-result-*different*-reason doctrine" is applicable in a case in which the appellate court "express[es] no view on the correctness of the lower court's rationale").

The Supreme Court has held that when police learned that a suspect had a firearm "in his pocket," they had probable cause to arrest him for carrying a concealed weapon. *Whitaker v. Commonwealth*, 279 Va. 268, 277-78 (2010). Here, Officers Allen and Bogdanovic received a tip that a male at the location had a concealed weapon on his person. When Officers Allen and Bogdanovic entered the store, Anthony repeatedly "glanc[ed]" at them and attempted to avoid them as they approached him. When he was about to encounter Bogdanovic, Anthony "backpedaled" and walked down a different aisle. Then, the officers saw Anthony reach toward a shelf with his left arm and heard a "loud clanking noise." From his vantage point, Officer Allen saw the firearm on the shelf where Anthony had reached.[6] He then signaled to Officer Bogdanovic, whereafter Officer Bogdanovic detained Anthony.

It is "universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, *concealment*, assumption of a false name, and *related conduct* are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) (emphases added) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991)). Thus, the tip regarding a concealed weapon,[7] Anthony's evasive

---

[6] Though the officers both had been watching Anthony, neither officer actually observed the firearm until Officer Allen saw it on the shelf.

[7] Anthony argues that the tip the officers received did not meet constitutional standards of reliability, as neither officer knew the tipster and the tip itself was hearsay, relayed to Officers Allen and Bogdanovic through another officer. While we agree that the tip, standing alone, may not have been sufficient to satisfy constitutional muster, *Illinois v. Gates*, 462 U.S. 213, 230 (1983), counsels that we do not analyze this type of evidence in a vacuum, "to be rigidly exacted in every case." Instead, we deploy a "totality-of-the-circumstances approach," recognizing that "[i]nformants' tips doubtless come in many shapes and sizes from many different types of persons" and that "'like all other clues and evidence coming to a policeman on the scene, [they] may vary greatly in their value and reliability.'" *Id.* at 231-33 (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). Accordingly, the fact that Officers Allen and Bogdanovic did not know the identity or reliability of the informant, as well as the fact that the tip was relayed via another officer, while "understood as relevant considerations in the totality-of-the-circumstances analysis," are not in and of themselves dispositive on the issue of probable cause. *Id.* at 233. As the court in *Gates* recognized, "a deficiency in [the tip] may be compensated for, in determining

behavior, and his futile attempt to discard and conceal the firearm without attracting attention as the officers approached him, taken together, provided probable cause that Anthony was carrying a firearm "hidden from common observation" about his person in violation of Code § 18.2-308 under *Whitaker*. Accordingly, the officers did not subject Anthony to an unlawful arrest triggering exclusion of the firearm and drugs as fruit of the poisonous tree.

## II. The officers lawfully seized the drugs from Anthony during a valid search incident to arrest.

It is well established that a law enforcement officer may search a person "either before or after" arresting him "if the search is contemporaneous with the arrest," and the arrest is supported by probable cause. *Copeland v. Commonwealth*, 42 Va. App. 424, 433 (2004) (quoting *Italiano v. Commonwealth*, 214 Va. 334, 336 (1973)). After Officers Allen and Bogdanovic lawfully handcuffed Anthony, as explained above, Bogdanovic promptly searched him and found suspected narcotics. The officers then formally arrested Anthony and transported him to jail, where he was charged with possession of a firearm after being convicted of a violent felony and possession of a concealed weapon, among other offenses. Thus, Officer Bogdanovic seized the drugs from Anthony during a valid search incident to arrest.

## CONCLUSION

In sum, the trial court did not err by denying Anthony's motion to suppress the firearm and drugs Officers Allen and Bogdanovic recovered during their investigation because they

---

the overall reliability of a tip, by a strong showing as to . . . some other indicia of reliability." *Id.* (citing *Adams*, 407 U.S. at 146-47). Here, though the officers had only a hunch or suspicion that an individual inside the store may have been concealing a weapon, and further, that Anthony was indeed that individual, Anthony's evasive conduct, as well as the unusual "loud clanking noise" heard by Officer Allen and subsequent discovery of the weapon, functioned to corroborate the veracity of the tip, thereby giving rise to probable cause that Anthony had possessed a concealed weapon on his person, and ultimately discarded it on the shelf in order to further conceal it from the police.

- 9 -

lawfully arrested Anthony, and then seized the drugs from him during a valid search incident to arrest.  Accordingly, the circuit court's judgment is affirmed.

*Affirmed.*